**\*E-FILED 2/15/06\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WITNESS SYSTEMS, INC., | NO. 05-mc-80298 JF (RS) |
| Plaintiff, | **ORDER DENYING MOTION FOR PROTECTIVE ORDER AND GRANTING MOTION TO COMPEL** |
| v. | |
| NICE SYSTEMS, INC., ET AL., | |
| Defendants. | |

## I. INTRODUCTION

Third-party Netopia, Inc. ("Netopia") seeks a protective order concerning the production of its trade secret source code to plaintiff Witness Systems, Inc. ("Witness") in an underlying patent infringement action which is currently pending between Witness and defendants Nice Systems, Inc. and Nice Systems, Ltd. (collectively, "Nice"). Although a protective order has been entered in the infringement case, Netopia contends that such order is insufficient to protect its highly confidential trade secrets, especially in light of the fact that Witness collaborates with Expertcity, Inc. ("Expertcity"), a direct competitor of Netopia. As a result, Netopia asks the Court to enter its proposed protective order to ensure that its source code is not revealed to its competitors.

Witness not only opposes the entry of an additional protective order, but also moves to compel production of Netopia's source code materials, as requested in the subpoena it issued to

Netopia. Witness contends that the protective order proposed by Netopia is too restrictive and costly, and is unnecessary in light of the orders existing in the underlying litigation. Witness also contends that Netopia cannot now object to the production of its source code materials since it previously agreed to provide those materials when the parties' negotiated an amendment to the existing protective order.

The motions were fully briefed and heard by the Court on February 15, 2006. Based on all papers filed to date, as well as on the oral argument of counsel, the Court denies the motion for a protective order and grants the cross-motion to compel, finding that the amended protective order and additional security protocols noted below provide reasonable security to protect Netopia's source code.

## II.  BACKGROUND

Witness and Nice directly compete in providing monitoring tools that record customer interactions, through both computer screen and voice capture, for quality control purposes. Third-parties Expertcity and Netopia are also direct competitors in providing remote control software utilized by Witness and Nice.

Witness owns two patents, both entitled "Method and Apparatus for Simultaneously Monitoring Computer User Screen and Telephone Activity from a Remote Location," which it contends are infringed by the software sold by Nice. As a result, Witness and Nice are engaged in litigation in the Northern District of Georgia and discovery is proceeding in that action. The software sold by Nice, as discovered by Witness, incorporates a remote control software product designed by Netopia called "Timbuktu." Since the Timbuktu software is an integral component of the Nice products which are alleged to infringe the patents-in-suit, Witness served a subpoena on Netopia in this district on January 12, 2005, pursuant to Fed. R. Civ. Pro. 45.

The subpoena issued to Netopia demands the production of various documents and information, all of which Netopia has apparently produced, with the exception of its source code materials. Netopia refuses to provide that material, claiming that inadequate safeguards have been implemented to protect against the dissemination of its trade secret source code to its direct

1  competitors, such as Expertcity, who collaborate with Witness. Netopia requests, therefore, that the
2  Court enter its proffered protective order before compelling it to provide its source code to the
3  parties in the underlying action. Witness responds that the protective order already in place, coupled
4  with conditions added to that order by an amendment specifically negotiated with, and agreed to by,
5  Netopia, addresses fully Netopia's concerns and ensures that its source code cannot be improperly
6  disclosed to any third parties, including Expertcity. Witness requests, therefore, that Netopia's
7  motion for entry of a protective order be denied, and that Netopia be compelled to provide its source
8  code materials to Witness.

### III. STANDARDS

Rule 45 of the Federal Rules of Civil Procedure governs subpoenas duces tecum for the production of documents with or without the taking of a deposition. Pursuant to Rule 45, the nonparty served with the subpoena duces tecum may make objections to the subpoena within 14 days after service. Fed. R. Civ. Pro. 45(c)(2)(B). "Only the witness can prevent disclosure by objection. The party to whom the subpoenaed records pertain cannot simply object. Rather, a protective order or motion to quash the subpoena is required." McCoy v. Southwest Airlines Company, Inc., 211 F.R.D. 381, 384 (C.D. Cal. 2002). Fed. R. Civ. Pro. 45(c)(3)(A)(iv) provides that a court may quash or modify an issued subpoena if it "subjects a person to undue burden." Non-parties have standing to assert that subpoenas seek non-relevant information. Compaq Computer Corp. v. Packard Bell Elecs., Inc., 163 F.R.D. 329, 335-36 (N.D. Cal. 1995).

Entry of a protective order is warranted where the moving party establishes "good cause" for an order and justice so requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense. Fed. R. Civ. Pro. 26(c). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." Phillips v. General Motors Corp., 307 F.3d 1206, 1210-11 (9th Cir. 2002). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Beckman Industries, Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992). Responding parties are, however, "entitled to protection from 'undue burden' in discovery,

3

including protection from misuse of trade secrets by competitors." <u>Brown Bag Software v. Symantec Corp.</u>, 960 F.2d 1465, 1470 (9th Cir. 1992).

## IV.  DISCUSSION

Netopia concedes that on March 23, 2005, it executed an amendment to the Consent Protective Order entered in the underlying infringement action. <u>See</u> Motion at p. 5, lines 25-26. That amendment states, in relevant part, that Netopia agrees amendments "....to the provisions of the Consent Protective Order shall govern the conduct of discovery" between Witness, Nice, and Netopia. <u>See</u> Declaration of Christopher Green, Exh. D, at p.1.  The Consent Protective Order sets forth two-and-a-half pages of procedures and security protocols to be utilized in connection with the production of computer source code. <u>Id.</u>, Exh. C, pp. 10-12.  Witness notes that a party who has agreed to a protective order will not later be heard to complain that the order is not justified. <u>See</u> <u>Bayer Ag and Miles, Inc. v. Barr Laboratories, Inc.</u>, 162 F.R.D. 456, 466 (S.D.N.Y. 1995).

Nonetheless, Netopia states that, because it had always objected to the production of its source code, the parties knew it did not intend to include such material in the context of its negotiations concerning the production of other non-trade secret items. All parties understood, according to Netopia, that it was agreeing only to the production of additional, non-source code materials which had been requested by Witness.[1]

Even assuming that Netopia did not agree to produce its source code under the terms of the protective order entered in the underlying patent litigation, the issue presented in this motion is whether that order provides adequate protections to preserve the confidentiality of its trade secret source code or if, as Netopia contends, additional safeguards must be added.  Netopia complains that not only does the current protective order lack necessary security protocols, but contends that Witness implicitly conceded as much both by amending the order and by orally agreeing to implement additional security measures not covered in the orders. Those actions, according to

---

[1] The correspondence submitted by both Witness and Netopia reflects Netopia's consistent refusal to provide its trade secret source code to Witness, absent additional protections and safeguards. <u>See e.g.</u>, Exhibits to Declarations of Christopher Green and Mitchell Blakely.

4

Netopia, coupled with the initial failure by Witness when it disclosed its experts to ensure that such experts executed the amendment to the protective order, require entry of an additional protective order.

"Courts have presumed that disclosure [of trade secrets] to a competitor is more harmful than disclosure to a noncompetitor." American Standard Inc. v. Pfizer, Inc., 828 F.2d 734, 741 (Fed. Cir. 1987). As a result, the court must balance the need for discovery of trade secrets against the claim of injury or undue burden resulting from such disclosure. Id. In this instance, there is no dispute that the source code is a trade secret or that Netopia, as a third party to the underlying dispute, has a heightened expectation that its proprietary information be protected. At the same time, Netopia concedes that its source code is relevant and necessary to the underlying patent litigation since it is admittedly incorporated into the Nice products which are accused of infringement. The crux of the dispute lies, therefore, in striking a balance between permitting Witness access to the information it needs to pursue its claims while at the same time protecting that information from unwarranted disclosure.

The proposed protective order proffered by Netopia imposes undue burdens and costs upon Witness, especially in light of the fact that Witness agrees to abide by several additional security protocols. Moreover, Netopia's offer to make its source code available for *inspection* rather than simply agreeing to produce the code to Witness is inconsistent not only with the protective orders entered in the underlying case, but with the Patent Local Rules promulgated in both this district and in the District of Georgia. See e.g., Green Decl., ¶ 12, Exh. F, Georgia Patent L.R. 4.2(b); N. D. Cal. Patent L.R. 3.4(a). It is reasonable to require Netopia to produce its source code to Witness, rather than simply requiring it to make the code available for inspection. Since the source code must be produced, the additional security measures proposed by Netopia, such as allowing inspection to occur at its outside counsel's office located in Palo Alto, California, and providing a person to monitor the requesting party's inspection do not come into play. Instead, Netopia must provide its source code on a suitable disk or CD-ROM, as provided in the Consent Protective Order entered in the underlying action.

5

In addition, the additional security protocols agreed to by the parties in the underlying infringement action and pursuant to which those parties produced their source codes to each other, shall be implemented by Witness with respect to Netopia's production of its source code. Witness is, therefore, ordered to provide a Second Amendment to the Consent Protective Order which reflects all additional security protocols implemented in the underlying action, as well any further measures to which Witness and Netopia may agree, to Netopia within five (5) days of the date of this order. Netopia and Witness shall execute that amendment and file it with the Court within ten (10) days of the date of this order so that Netopia may then provide its source code to Witness.

## V.  CONCLUSION

For the reasons stated above, the Court denies the motion for entry of the protective order regarding third party Netopia and grants the cross-motion to compel production of the source code materials. Netopia shall provide the source code information requested by Witness, pursuant to the terms and conditions contained in the Consent Protective Order filed in the underlying action on March 17, 2005, the Stipulated Amendment to the Consent Protective Order filed on March 23, 2005, and the Second Amendment to the Consent Protective Order to be entered by this Court, within thirty (30) days of the date of this order.

IT IS SO ORDERED.

Dated: February 15, 2006

RICHARD SEEBORG
United States Magistrate Judge

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN DELIVERED TO:**

Mitchell M. Blakely   mblakely@morganlewis.com

David C. Bohrer dbohrer@morganlewis.com, giyer@morganlewis.com; tbrewster@morganlewis.com

Katherine D. Prescott   prescott@fr.com, horsley@fr.com

**Dated: 2/15/06**                                                             **Chambers of Judge Richard Seeborg**

                                                                                              **By:**   **/s/ BAK**

**United States District Court**
For the Northern District of California